**JOHN B. KELLY, Inc.**

v.

**ARONIMINK VILLAGE APART-MENTS, Inc.**

Civ. No. 11392.

United States District Court,
E. D. Pennsylvania.

July 26, 1954.

---

Thomas A. Galbally, Philadelphia, Pa., for plaintiff.

C. William Kraft, Jr., Media, Pa., for defendant.

GRIM, District Judge.

By a contract dated May 12, 1948, plaintiff agreed to furnish the labor and materials to do the brickwork in a large building development of the defendant for $1,420,000. Plaintiff completed the work, but defendant held back and refused to pay to plaintiff $50,068.74 out of the contract price contending that the work had not been done satisfactorily. In this action plaintiff has sued for this sum. At the trial the jury awarded plaintiff a verdict in the sum of $56,500. The jury apparently concluded that some pointing in the brickwork had not been done satisfactorily and in its verdict apparently made an allowance to the defendant for the cost of repointing these bricks, plus interest on this sum. Defendant has filed a motion for a new trial.

As part of the contract between the parties and incorporated therein by reference there were certain "terms and conditions". Under these terms and conditions plaintiff was entitled to certain payments as the work progressed provided he obtained certain statements certifying that the work in its various stages had been done satisfactorily.

The terms and conditions provided:

"Applications for payments under this contract shall be made by the Subcontractor [the plaintiff] to the Contractor [1] [the defendant], when approved by the Architect, in quadruplicate * * * on or about the twenty-fifth day of each month after the commencement of work hereunder for payment for work done during the preceding part of that month. The sum to which the Subcontractor shall be entitled upon any such payment shall be the cost of the portions of the work acceptably completed, as approved by the Architect, Contractor and the Commissioner [of the Federal Housing Administration] less ten per cent (10%) and less prior advances * * The Subcontractor shall only be entitled to payments in the amount approved by the Architect, Contractor and the Commissioner with respect to the work covered by said application * * * Upon completion by the subcontractor of its contract with respect to each one of the four blocks * * * the entire balance due the subcontractor (including the ten per cent retained by the contractor) with respect to said block, shall be payable to the subcontractor upon the expiration of thirty days from the date of final completion of said block and acceptance of work by the Owner, the Contractor and the Architect with the approval of the Federal Housing Commissioner."

In view of this clause in the contract, in order to recover plaintiff had to prove that his work had been approv-

[1] The contractor was the owner in this case.

ed up to the final stage by the owner, the architect and the Federal Housing Administration. To do this plaintiff introduced into evidence certain statements executed from time to time during the progress of the work by the owner, the general contractor, the architect and the F.H.A. inspectors, certifying that as of the time of each statement the work had been done properly and in accordance with the requirements of the contract. Plaintiff also introduced statements of each of these parties after final completion certifying that one hundred per cent of the work had been done satisfactorily and in accordance with the requirements of the contract. Obviously these statements of approval were properly admissible in the trial of the case.

Because these certificates were in the record the trial judge affirmed a point for charge, which had beeen submitted by the plaintiff, which read as follows:

"The owners, the architect and the Federal Housing Administration have, each, certified in writing, that plaintiff has performed its contract."

■ This point for charge states precisely what the evidence shows that these parties had done. Defendant does not contend that these certificates were inadmissible, but it contends that the point for charge should not have been affirmed, because in another part of the contract (the general conditions) it is provided that no certificate issued nor payment made to the subcontractor shall be an acceptance of any work or materials not in accordance with the requirements of the contract. This contention must be rejected. A reading of the entire charge will show [2] that the issue as to whether or not the work had been done in accordance with the requirements of the contract was clearly left to the jury. The affirmance of the point for charge to

which defendant objects in no way confused the jury and in no way took this fundamental issue from the jury. In my opinion it did nothing more than state a fact which was clearly in accord with the evidence in the case, and, therefore, no error was committed in affirming this point for charge.

Defendant filed a Counter-claim in which it averred that the contract price of $1,420,000 was arrived at by including in it the sum of $129,000 as payment for certain overtime wages which it was anticipated that plaintiff would be required to pay. It averred that the parties believed that in order to complete the work within the period desired by the owner and specified in the contract it would be necessary for plaintiff to work six days a week and to pay his employees double time for the Saturday work. It turned out, however, that plaintiff did his work so swiftly that he finished the job before the date specified in the contract and without having worked six days a week during part of the period of the construction. Because plaintiff did not work six days a week all the time it averred that plaintiff paid only $41,455 for Saturday overtime pay thereby saving $87,545 out of the $129,000 allotted for overtime pay. It was averred that defendant is entitled to recover this $87,545 from plaintiff, both because this would carry out the implied understanding between the parties and because plaintiff will be unjustly enriched by this amount, if plaintiff is permitted to retain it.

At the time of the trial defendant attempted to prove the averments in the Counter-claim. Plaintiff objected to proof of these averments on the ground that proof of them was inadmissible under the parol evidence rule, and the trial judge sustained the objection. This ruling of the trial judge is assigned as error in the motion for a new trial.[3]

---

2. I make this statement from memory. The notes of testimony have not been transcribed.

3. Defendant has agreed that if the only error in the trial is in this parol evidence

problem there need be no new trial generally, but that in this event the new trial may be confined to a determination of the amount, if any, owing from plaintiff to defendant because plaintiff did not at all times work six days a week.

▮ Defendant points to a sentence in the contract as the basis for its contention that proof was admissible to show that the contract price was to be reduced by the amount which plaintiff could save by not working on Saturdays. This sentence is: "This contract is based on working six (6) days a week." Defendant contends that these words are so ambiguous or that they create so obvious an omission in the contract that parol evidence is admissible to explain what they mean. This contention must be rejected. Immediately following these words in the contract is a paragraph headed "Time of Completion", which states: " * * * completion to the satisfaction of the Architect and the Contractor shall be had on or before July 1, 1949." When these two sentences are read together they mean quite clearly and simply that plaintiff was required to complete the work satisfactorily by July 1, 1949, and to do this it had to work six days a week until the job was done unless it could finish the work satisfactorily before July 1, 1949, without working six days a week.[4] It is true that the thought expressed in these sentences could have been stated with more precision, but in my opinion it has been expressed clearly enough to make the problem one of construction rather than a problem of parol evidence.

▮ Under the law of Pennsylvania, which governs the case,[5] it is clear that " 'Where parties, without any fraud or mistake [No fraud or mistake is averred in this case], have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only, evidence of their agreement.' * * * the writing will be looked at, and if it appears to be a contract complete within itself, 'couched in such terms as import a complete legal obligation without any uncertainty as to the object or extent of the engagement, it is conclusively presumed that the whole engagement of the parties, and the extent and manner of their undertaking, were reduced to writing.' " Gianni v. Russell & Co., 281 Pa. 320, 323, 126 A. 791, 792.

While it is difficult to draw a clear and always understandable parol evidence rule from the Pennsylvania decisions, the Pennsylvania courts have shown a marked tendency to find written contracts to be complete on their face and therefore not subject to enlargement or change by parol evidence. This is particularly true of formal instruments such as leases, Priestman-Helmetag Co. v. Wolf, 317 Pa. 346, 177 A. 205; deeds, Nallin-Jennings Park Co. v. Sterling, 364 Pa. 611, 73 A.2d 390, 20 A.L.R.2d 793; mortgages, Pennsylvania Co. for Insurances on Lives and Granting Annuities, to Use of Belmont v. Lebanon Building & Loan Ass'n, 337 Pa. 316, 10 A.2d 418; and elaborately drawn contracts, O'Brien v. O'Brien, 362 Pa. 66, 66 A.2d 309; Walker v. Saricks, 360 Pa. 594, 63 A.2d 9; First Nat. Bank of Scranton v. Payne, 349 Pa. 446, 37 A.2d 568. The contract in the present case is elaborately drawn. It incorporates by reference numerous and long specifications and general condi-

4. This is the meaning which plaintiff at the trial and at the argument put upon these words and it is the meaning which plaintiff put upon these words during the course of construction. In its brief defendant makes the statement ". . . it is undisputed that the plaintiff breached the contract by failing to work six (6) days a week for many successive weeks despite the provision in the contract between plaintiff and defendant that 'This contract is based on working six (6) days a week' ". As I remember the evidence and the offer of proof defendant made no such contention during the course of construction although it had numerous inspectors on the job and it made payments to plaintiff without complaint during the period when plaintiff was not working six days a week. The contention that a failure to work six days a week at all times was a breach of the contract is inconsistent with the contention that if plaintiff could save money by not working six days a week defendant was entitled to the benefit of these savings.

5. The parol evidence rule is not a rule of evidence, but a rule of substantive law, 9 Wigmore on Evidence, Sec. 2400; O'Brien v. O'Brien, 362 Pa. 66, 66 A.2d 309.

tions. Altogether it is a carefully drawn building contract having in it apparently all the details the parties had in mind. It contains no obvious omission or ambiguity.

 There are certain things mentioned in the contract for which credit was to be given on the contract price by the plaintiff. The contract provides: "Face brick shall be of the standard $40 per thousand category. If a straight hard brick or sand lime brick is used in lieu thereof for exterior facing the subcontractor shall make an allowance to the contractor for the difference in the cost thereof." It provides also: "If cinder concrete block is used in lieu of brick in or for chimneys the subcontractor shall make an allowance to the contractor for the difference in cost thereof." It also provides: "The Contractor shall pay the Subcontractor for the performance of this contract subject to additions for authorized extras and deductions for authorized omissions." [6] Certainly it would seem that if the parties had in mind a fourth situation which could cause the contract price to be reduced they would have set this forth in the contract just as they set forth the other three situations which could cause a reduction in the contract price. In view of this defendant's proffered parol evidence is inadmissible also under another principle mentioned by the Pennsylvania Supreme Court in Gianni v. Russell & Co., supra, 281 Pa. at page 323–324, 126 A. at page 792, where it was suggested that an examination of the proffered parol evidence and the written contract should be made "by comparing the two, and determining whether parties, situated as were the ones to the contract, would naturally and normally include the one in the other if it were made." A comparison of the parol evidence with the written contract in the present case leads to the conclusion that the parties naturally and normally would have included the terms now suggested

by parol evidence in the written contract if such terms had been made. Since the suggested terms were not put into the written contract they cannot be put there by parol evidence.

The motion for a new trial is denied.

6. No contention is made that the alleged saving in overtime pay is something which can be regarded as an authorized omission.